IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No.: 3:22-cv-43

| | | |
|---|---|---|
| JOHANNA NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT AND JURY REQUEST |
| | ) | |
| ROBERT HILL; | ) | |
| ELVENIA A. BARNETT; and | ) | |
| KLUTTS PROPERTY | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

1.     This action primarily concerns violations of the federal Fair Housing Act, 42 U.S.C.

§ 3601, et seq., relating to the landlord-tenant relationship between Plaintiff Johanna Nelson and

Defendant Robert Hill, his agent Defendant Elvenia Andrea Barnett, and the rental management

company that also acted as agent of Defendants Robert Hill and Elvenia Andrea Barnett, Defendant

Klutts Property Management Inc. Ms. Nelson was and remains a tenant of  Defendant Robert Hill

at all times relevant to this Complaint and was a victim of discrimination, sexual harassment,

coercion, retaliation and interference in the exercise of her fair housing rights in violation of the

federal Fair Housing Act, 42 U.S.C. § 3601, et seq.

2.     Plaintiff Johanna Nelson also seeks relief for Defendants' violation of her rights

under state law including breach of lease, breach of implied covenant of quiet enjoyment, unfair

debt collection practices, unfair and deceptive trade practices, failure to maintain property in fit

and habitable condition, battery, negligence, and invasion of privacy. Each paragraph of this Complaint incorporates all others.

## PARTIES

3.     Plaintiff Johanna Nelson is resident of Charlotte, North Carolina, and is not a minor or incompetent. At all times relevant herein, Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

4.     Defendant Robert Hill ("Hill"), an individual, is a resident of Charlotte, North Carolina. At all times relevant herein, Hill owned and operated approximately thirty-five rental properties located in Charlotte, North Carolina, including the single-family home rented by Plaintiff Nelson and that is the subject of this lawsuit (hereinafter "Subject Property"). Upon information and belief, Defendant Hill is in his late 80s.

5.     At all times relevant to this action, upon information and belief, Defendant Elvenia Andrea Barnett ("Barnett"), daughter of Defendant Hill, acted as an agent and/or employee of Defendant Hill in the management of rental properties owned and/or operated by Hill in North Carolina, including the Subject Property. Upon information and belief, Defendant Barnett lives in York, South Carolina. Upon information and belief, based on her involvement in showing the Subject Property to Ms. Nelson, drafting lease contracts for Ms. Nelson and Defendant Hill for the Subject Property, and other facts alleged herein, Barnett was a decision-maker related to the claims raised in this Complaint, which included, but was not limited to, having the ability and obligation to investigate and report claims. Barnett is neither an infant nor an incompetent.

6.     Defendant Klutts Property Management, Inc. ("Klutts") is a domestic corporation organized in North Carolina with its principal office located in Charlotte, North Carolina. Klutts formerly operated under the legal name "Charlotte Realty Group. Inc." Dellene Maybin is the

state-licensed broker-in-charge, and J. Vaughn Klutts, Jr. is the qualifying broker of Klutts and upon information and belief they were the persons responsible for Klutts' compliance with state and federal laws at all times relevant to this complaint. Klutts manages and operates some of the properties owned and operated by Defendant Hill, including the Subject Property.  Upon information and belief, Klutts is an agent of Defendant Hill and/or Defendant Barnett.

7.     At all times relevant to this action, Defendants Hill, Barnett, and Klutts, and each of them, were the "landlord" of Plaintiff within the meaning of N.C. Gen. Stat. § 42-40 and the Subject Property fell within the definition of "Premises" as described under N.C. Gen. Stat. § 42-40.

8.     At all times relevant to this action, all Defendants, in the ordinary course of business in their operation of the rental properties relevant herein, engaged in acts or practices affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

9.     Defendants Klutts and/or Barnett knew or should have known of Hill's misconduct, had authority to do so, but failed to take corrective action.

10.     As further described below, each Defendant is directly, vicariously and/or jointly and severally liable for the misconduct of each other Defendant, including the injuries sustained by Plaintiff.

**JURISDICTION AND VENUE**

11.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 42 U.S.C. § 3613 in that the claims alleged herein arise under the federal Fair Housing Act and involve citizens of different States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to

Plaintiff's federal law claim and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

12.    Venue is proper under 28 U.S.C. § 1391 in that the claims alleged herein arose within Mecklenburg County in the Western District of North Carolina.

## FACTS

A. **Introduction**

13.    Starting in 2019, Defendant Hill discriminated against Ms. Nelson on the basis of sex, subjecting her to severe, pervasive, and unwelcome sexual harassment, including:

a.    Making unwelcome sexual comments and unwelcome sexual advances to Ms. Nelson;

b.    Subjecting Ms. Nelson to unwanted sexual touching;

c.    Conditioning or offering tangible housing benefits – such as accepting late rent, repairs, or keeping the home in habitable conditions – in exchange for sexual acts by Ms. Nelson; and

d.    Taking adverse housing actions against Ms. Nelson, who would not grant sexual favors, including trying to terminate the tenancy and evict her from the Subject Property.

14.    Upon information and belief, Defendant Barnett knew or otherwise should have known of Hill's sexual harassment and discrimination of Ms. Nelson, but she did not take steps to investigate or take corrective action in response. Instead, Barnett tried to terminate or otherwise authorized the termination of Ms. Nelson's tenancy and the attempted eviction of Plaintiff from the Subject Property.

4

15.     Upon information and belief, Defendant Klutts knew or otherwise should have known of Hill's sexual harassment and discrimination of Ms. Nelson, but it did not take steps to investigate or take corrective action in response. Instead, Defendant Klutts tried to terminate Plaintiff's tenancy and evict her from the Subject Property after Plaintiff refused Hill's sexual advances.

**B. Plaintiff**

16.     Plaintiff Johanna Nelson, a thirty-five-year-old Black American woman, rented a house in Charlotte, North Carolina, from Defendant Hill starting in or around August 2018. Ms. Nelson has occupied the house since that date with her four minor children, ages 8 years, 7 years, 5 years and 1 year.

17.     Ms. Nelson first encountered Defendant Hill and Defendant Barnett in 2018 when she looked at the house before moving in.

18.     Ms. Nelson paid rent in cash to Defendant Hill. Defendant Hill did not usually give Ms. Nelson receipts.

19.     Ms. Nelson delivered her rental payments to Defendant Hill in person, usually when he was at or near her property because he stored, and frequently used, construction equipment at a lot adjacent to Ms. Nelson's home.


_Defendant Hill Sexually Harasses Ms. Nelson and Coerces/Retaliates_

20.     During the fall of 2019, Ms. Nelson experienced financial hardships that made it difficult for her to pay rent in a timely manner.

5

21.	In or around October 2019, Ms. Nelson spoke to Defendant Hill about her financial difficulties and notified him she was seeking rental assistance from a public agency. She needed a current written lease to qualify for rental assistance.

22.	Defendant Hill told Ms. Nelson he would renew her lease and give her time to get caught up on past due rent.

23.	In exchange for allowing Ms. Nelson to continue renting from him, Defendant Hill told Ms. Nelson that he did not want her to allow any Black men in her home. Ms. Nelson understood this to be a reference to the father of her children, who did not live with her, but helped provide childcare so Ms. Nelson could work.

24.	Later in October, 2019, Ms. Nelson and Defendant Hill discussed the terms of the lease renewal in the presence of Defendant Barnett at Defendant Hill's house. Upon information and belief, Defendant Barnett then prepared a written lease for Ms. Nelson and Defendant Hill to sign.

25.	Around the week before Christmas, 2019, Ms. Nelson encountered Defendant Hill on the street where the Subject Project is located when she was driving home from work early in the morning. He waved to her to slow down, and she stopped and rolled down her window. They engaged in a conversation while Ms. Nelson remained in her car and Defendant Hill stood outside the car. Defendant Hill asked Ms. Nelson what Santa was bringing her for Christmas. Ms. Nelson responded that she didn't care and only wanted her children to get presents.

26.	Defendant Hill began massaging Ms. Nelson's shoulder and then immediately leaned in the car window and attempted to kiss Ms. Nelson on the mouth, both of which were unwelcome by her.  Ms. Nelson felt Defendant Hill's face on or around her mouth and turned her

head to prevent him from kissing her. Ms. Nelson was surprised by Defendant Hill's unwelcome attempt to kiss her and said she needed to get home to her children. She quickly drove away.

27.　　In or around January 2020, Ms. Nelson gave Defendant Hill $2,500 in cash to catch up on past due rent. Defendant Hill did not give Ms. Nelson a receipt for this payment.

28.　　In or around January 2020, Ms. Nelson informed Defendant Hill that she had been hired at a new job that would enable her to have more steady income. Ms. Nelson mentioned her children's father, who is Black, would be helping to watch the children so she could work. Defendant Hill got angry that she would be allowing her children's father to be in her home and told Ms. Nelson that he was going to have to get his daughter, Defendant Barnett, involved which Ms. Nelson interpreted as a threat that Defendant Hill would not work with her related to her late rent payments because Ms. Nelson understood Defendant Barnett to oversee handling financial matters for Defendant Hill's rental properties.

29.　　In or around February 2020, Ms. Nelson and her children encountered Defendant Hill in her yard of the Subject Property. After speaking with Ms. Nelson briefly, Defendant Hill asked Ms. Nelson to spend the night at his house, which she reasonably understood to mean he wanted her to sleep with her or have sex with him. Ms. Nelson attempted to laugh it off and said she had her own house and asked where the children would sleep. Defendant Hill said they could go to Walmart and buy sleeping bags right away. Defendant Hill further said Ms. Nelson could sleep in his bed, which again, Ms. Nelson reasonably understood to mean Hill wanted to sleep with her or have sex with him. Ms. Nelson declined.

30.　　Ms. Nelson felt disgusted at Defendant Hill's propositions and his attempt to kiss her. After Defendant Hill made sexual advances, she felt she could not trust anyone. She felt

trapped in her situation. She felt nervous and anxious, especially when she saw Defendant Hill's car.

*Ms. Nelson Reports Sexual Harassment to Defendant Barnett*

31.  Following this incident, in February 2020, Ms. Nelson told her mother that Defendant Hill had propositioned her and that she was concerned about her housing situation.

32.  Ms. Nelson's mother then contacted Defendant Hill and asked him about Ms. Nelson's rental situation. Defendant Hill stated that Ms. Nelson knew what she had to do if she wanted to continue to rent from him, but he would not elaborate what he meant.

33.  Later in February, Ms. Nelson and her mother saw Defendant Barnett on Ms. Nelson's and beckoned her to the yard. They reported to Defendant Barnett that Defendant Hill had made unwelcome sexual advances.

34.  Defendant Barnett stated that she did not think it was appropriate to discuss the matter without Defendant Hill present to defend himself. Ms. Nelson said she would be willing to discuss this matter while Defendant Hill was present, and suggested that Defendant Barnett contact him right away, but Defendant Barnett refused.

35.  Defendant Barnett then stated that Ms. Nelson was behind on rent. Ms. Nelson notified Defendant Barnett that she had recently paid Defendant Hill $2500 in cash. Defendant Barnett stated that Defendant Hill had denied she had given him any money.

36.  Upon information and belief, following Ms. Nelson's report about Defendant Hill's harassment, Defendant Barnett contracted with Defendant Klutts to handle the management of Ms. Nelson's rental property, including the Subject Property.

*Defendants Retaliate Against Ms. Nelson by Refusing to Make Repairs*

37.     Since early 2020, after Ms. Nelson rebuffed Defendant Hill's attempt to kiss her and notified Defendant Hill that her children's father would need to come to the house, Defendant Hill has refused to make repairs to her house.

38.     Previously, Defendant Hill, through his maintenance staff, had promptly responded to repair requests from Ms. Nelson, such as repairing holes that caused a mouse infestation and repairing the thermostat in the home during 2019.

39.     Starting in early 2020, after Plaintiff refused Hill's sexual advances and reported his sexual harassment of her, Defendants have not made repairs to Ms. Nelson's rental property. This refusal to make needed repairs occurred even though Ms. Nelson reported the problems to a maintenance person, who upon information and belief is named Harry, when he periodically came to the house to change the air filters. Based on information and belief, Harry is an employee of Defendant Hill.

40.     On approximately four occasions since early 2020, Harry came to the Subject Property to replace Ms. Nelson's air filters. On those occasions, Ms. Nelson reported repairs that were needed to the property, including fixing a broken bathroom sink that does not function, fixing a leaky faucet in the shower, repairing a hole in the bathroom floor, fixing the thermostat in the house which broke after an initial repair in 2019 and causes the house to be very hot in the summers, faulty wiring resulting in several electrical sockets not working, including one that exploded, and addressing moisture issues that are causing mold.

41.     Harry informed Ms. Nelson that he was reporting the repair needs to Defendant Hill, but he could not fix them unless and until he was instructed by Hill to do so.

42.     The requested, but unremedied repairs also impact the habitability of Ms. Nelson's home and include a bathroom sink that has not worked in over a year, a gap between the floor and

the wall in the bathroom, unsafe wiring, additional mouse infestations, and mold caused by moisture in the house.

43.     It is Ms. Nelson's belief that Defendant stopped making repairs and continues to refuse to make repairs because she would not relent to his advances and engage in sexual activity with him, thereby rendering her home unsafe for her and her children.

*Defendants Further Retaliate against Ms. Nelson by Attempting to Evict Her*

44.     Upon information and belief, shortly after Ms. Nelson reported Defendant Hill's harassment to Defendant Barnett in February 2020, Defendant Barnett and/or Defendant Hill contracted with Defendant Klutts to manage the Subject Property.

45.     In or around late February 2020, shortly after Ms. Nelson reported to Defendant Barnett her father's sexual harassment of Ms. Nelson, Defendant Klutts notified Ms. Nelson that her lease was to be considered terminated on or around March 6, 2020, for unpaid rent.

46.     Prior to receiving this letter, even though Ms. Nelson had been behind on rent, she had not been given any lease termination notice or threatened with eviction; rather she had been told by Defendant Hill that he would work with her so she could get caught up.

47.     On March 13, 2020, Chief Justice Cheri Beasley of the North Carolina Supreme Court, acting within her authority under N.C.G.S. § 7A-39(b)(2), issued Emergency Directive 1, directing the postponement of all non-essential judicial proceedings. *Order of the Chief Justice*: *Emergency Directive 1* (March 13, 2020).

48.     Approximately two weeks later, Governor Roy Cooper issued an Executive Order stating that "no new eviction proceedings" should occur until these orders expired. *Assisting North*

*Carolinians by Prohibiting Utility Shut-Offs, Late Fees, and Reconnection Fees; Providing Guidance about Restrictions on Evictions, etc.,* Executive Order No. 124 (March 31, 2020).

49.    Because of the ongoing risks posed by COVID-19, Governor Roy Cooper issued a 21-day moratorium on residential evictions in North Carolina beginning on the 30th of May 2020. *Assisting North Carolinians by Placing Temporary Prohibitions on Evictions and Extending the Prohibition on Utility Shut-Offs*, Executive Order No. 142 (May 30, 2020). These protections expired on June 30th, 2020. *Id.*

50.    At the national level, on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which included a federal eviction moratorium. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, § 4024 (2020). The CARES Act's eviction moratorium prohibited the filing of new eviction actions against tenants living in certain federally assisted or financed properties. *Id.* The CARES Act's protections expired on July 24, 2020. *Id.*

51.    Upon the expiration of the CARES Act, upon information and belief, based on prior instruction from Defendants Hill and Barnett, Defendant Klutts took immediate steps to evict Ms. Nelson.

52.    On or around August 13, 2020, Defendant Klutts filed a summary ejectment or eviction action in Mecklenburg County against Ms. Nelson. That case was dismissed on or around March 2021.

53.    Defendant Klutts filed additional Summary Ejectment actions against Ms. Nelson in August 2021, October 2021 and December 2021 for unpaid rent. Those cases were also dismissed.

54.     Ms. Nelson does not dispute some rent owed to Defendants. It was only after Ms. Nelson rebuffed and reported Hill's sexual advances, that Defendant Hill ceased working with her, terminated her lease and filed for eviction four times.

*Defendants Further Retaliated Against Ms. Nelson by Intimidation*

55.     Since Ms. Nelson reported Defendant Hill's harassment to Defendant Barnett, Ms. Nelson has seen Defendant Hill and Defendant Barnett drive by her house and stop in front of her house for several minutes on several occasions in a way that Ms. Nelson feels is intended to intimidate and frighten her.

56.     Defendant Hill and Defendant Barnett stopped in front of her house for approximately ten minutes in or around November 2021.

57.     On a number of occasions between March 2020 and the present, often on or near the dates of eviction hearings against Ms. Nelson, Defendant Barnett has driven slowly and or stopped her car in front or next to Ms. Nelson's house, usually for approximately five minutes each time with no apparent purpose for doing so. Ms. Nelson believes it is Defendant's intent to intimidate and frighten her.

58.     During an eviction proceeding in December 2021, Defendant Barnett and an employee of Defendant Klutts turned and glared at Ms. Nelson several times in a manner she believed was intended to intimidate and frighten her.

**C. Other Victims**

59.     Upon information and belief, since at least 2000, Defendant Hill has engaged in a pattern or practice of sexual harassment, targeting female tenants to demand sexual favors from them. Upon information and belief other tenants of Defendant Hill experienced one or more of the

following actions a) Defendant Hill physically touched one or more tenants in an unwelcome manner often while in their home making them feel uncomfortable and unsafe; and b) Defendant Hill made unwelcome and repeated comments about female tenants' physical appearance, looked at them in a manner that made them feel unsafe and uncomfortable, and/or asked them on dates, often while physically in the tenants' home.

60.     Upon information and belief, prior to Plaintiff's tenancy with Defendants, Defendant Klutts was made aware by another female tenant of Defendant Hill that Defendant Hill conditioned making repairs on engaging in sexual activity and of Defendant Hill's acts of coercion, intimidation, and retaliation.

**D. Defendants' Unlawful Housing Practices**

61.     Based on these facts alleged in this complaint, Defendants, and each of them, injured Plaintiff by committing, directly or through their agents, discriminatory housing practices including but not limited to:

> a. Conditioning the availability of a dwelling on a person's response to harassment because of sex;
>
> b. Subjecting a person to harassment because of sex;
>
> c. Conditioning the terms, conditions, or privileges relating to the rental of a dwelling, or denying or limiting the services or facilities in connection therewith, on a person's response to harassment because of sex;
>
> d. Subjecting a person to harassment because of sex that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting service or facilities in connection with the rental of a dwelling;

e. Creating a hostile living environment based on sex by engaging in unwelcome conduct that was sufficiently severe or pervasive to alter a person's living environment and, as a result, created an abusive environment;

f. Expressing to agents, brokers, employees, or renters or any other persons a preference for or limitation on any renter because of sex of such persons;

g. Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the rental of a dwelling of sex;

h. Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the sex of such persons;

j. Retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority;

k. Failing to take prompt action to correct and end a discriminatory housing practice where the person knew or should have known of the discriminatory conduct and had the power to correct it; and

62. Engaging in other unlawful trade and deceptive practices or acts.

63. Each Defendant is directly liable for the commission for each of these unlawful practices:

a. As a result of his, her, or its own conduct;

b. For failing to take prompt action to correct and end a discriminatory or unlawful housing practice by that Defendant's agent, given knowledge of the agent's unlawful and discriminatory conduct;

c. For failing to take prompt action to correct and end unlawful and discriminatory housing practices by Hill; or

14

d. For ratifying the unlawful or discriminatory housing practices committed by any other defendant.

64.     Defendant Hill is also vicariously liable for the conduct of his agent or employee, Defendant Barnett, and his agent, Defendant Klutts through their own acts or omissions.

65.     Defendant Klutts is also vicariously liable for the conduct of their agents who ratified Hill's and Barnett's misconduct through their own acts or omissions.

**E. Injuries**

66.     As a result of Defendants' misconduct – their unlawful acts or practices, Ms. Nelson suffered emotional distress, including humiliation, mental anguish, violation of her civil rights, loss of dignity, embarrassment and other injuries. Ms. Nelson also suffered an invasion to her private right of occupancy, depriving her of the full use and enjoyment of her dwelling and tenancy, invasion of her privacy, and loss of important housing opportunities. Accordingly, Ms. Nelson is entitled to compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c) and under her supplemental state law claims raised in this Complaint.

67.     Defendants committed the discriminatory housing practices alleged in this Complaint with reckless disregard for Ms. Nelson's federally protected rights. Accordingly, Ms. Nelson is entitled to punitive damages, which she seeks only under the federal Fair Housing Act, 42 U.S.C. § 3613(c).

68.     There now exists an actual controversy between the parties regarding their rights and duties under the Fair Housing Act and state law. Accordingly, Ms. Nelson is entitled to declaratory relief under the federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

69.     Unless enjoined, Defendants will continue to engage in the pattern or practice of discrimination, harassment, and retaliation described in this complaint. Ms. Nelson has no adequate remedy at law. She is now suffering and will continue to suffer irreparable injury as a result of defendants' pattern or practice of discrimination, harassment, and retaliation unless relief is provided by this Court. Other tenants will suffer the same fate unless relief is provided by this Court to advance the public interest. Accordingly, Ms. Nelson is entitled to injunctive relief under her federal and state law claims, including, but not limited to, the federal Fair Housing Act, 42 U.S.C. § 3613(c), and Rule 65 of the Federal Rules of Civil Procedure.

## First Cause of Action: Fair Housing Act
### (Against All Defendants)

70.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

71.     Defendants, and each of them, directly or through their agents, injured Ms. Nelson by committing the following discriminatory housing practices in violation of the Fair Housing Act:

   a.     Making unavailable or denying a dwelling to any person because of sex, in violation of 42 U.S.C. § 3604(a);

   b.     Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

   c.     Quid pro quo harassment in violation of 42 U.S.C. §3604(b) and 24 C.F.R § 100.600(a)(1);

   d.     Hostile housing environment based on sex in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.600(a)(2);

16

e. Making or causing to be made any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c);

f. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected under the Fair Housing Act, in violation of 42 U.S.C. § 3617;

g. Threatening, intimidating or interfering with a person in their enjoyment of a dwelling based on the sex of such person in violation of 42 U.S.C. § 3617; and

h. Retaliating against any such person because that person reported a discriminatory housing practice to a landlord or housing provider in violation of 42 U.S.C. § 3617.

72. Ms. Nelson is an "aggrieved person" under the Fair Housing Act, 42 U.S.C. § 3602. Therefore, Ms. Nelson is entitled to monetary, declaratory, and injunctive relief under the Fair Housing Act, 42 U.S.C. § 3613.

**Second Cause of Action: Breach of Contract**
**(Against All Defendants)**

73. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

74. Defendant Hill entered into a lease agreement with Plaintiff for the rental of the dwelling located at the Subject Property in Charlotte, North Carolina.

75.     As part of this lease agreement, the Landlord is responsible for repairs to the interior and exterior of the property.

76.     Defendants Hill, Barnett, and Klutts have not made numerous repairs to the property as requested by Ms. Nelson.

77.     The broken bathroom sink is a violation of the Charlotte Minimum Housing Code § 11-80(c) which requires that all fixtures be operable.

78.     The hole in the floor in the bathroom is a violation of the Charlotte Minimum Housing Code § 11-83(b)(5) which requires that "flooring shall be weathertight without holes or excessive cracks which permit air to penetrate rooms."

79.     Defendant Hill, Barnett, and Klutts breached the provisions of the lease agreements by failing to make repairs to the property.

80.     Plaintiff suffered injuries as a result of the breach by Defendant.

**Third Cause of Action: Breach of the Implied Covenant of Quiet Enjoyment**
**(Against Defendant Hill)**

81.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

82.     Unless there is a lease provision to the contrary, there is an implied covenant that the lessee shall have the quiet and peaceable possession of the leased premises during the tenancy.

83.     Defendant Hill, injured Plaintiff by breaching her private right of occupancy and infringing on her right of quiet enjoyment in violation of state common law and statutes.

**Fourth Cause of Action: Negligence**
**(Against All Defendants)**

84.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

85. Defendants Hill, Klutts, and Barnett owed a duty of care to Ms. Nelson.

86. Defendants Klutts, through their Broker in Charge and Qualifying Broker, had a duty of care imposed on them by North Carolina law related to the licensing of real estate professionals and they breached this duty.

87. Defendant Hill breached this duty by his actions seeking to elicit sexual favors from Plaintiff in exchange for accepting late rent payments that would allow her to stay housed and making repairs that would allow her and her children to live in a safe home.

88. Defendants Klutts and Barnett breached their duty of reasonable care to Ms. Nelson by failing to promptly investigate the sexual harassment allegations involving Hill when they knew or should have known about them, by failing to take prompt corrective action when they had the power to do so and by taking affirmative actions to terminate Ms. Nelson's tenancy and evict her and her family when she reported the sexual harassment by Defendant Hill.

89. Plaintiff suffered injuries as a result of the breach of the duty of reasonable care by Defendants Hill, Klutts and Barnett.

**Fifth Cause of Action: Failure to Maintain Premises in Fit and Habitable Condition
(Against All Defendants)**

90. Plaintiff realleges and incorporates by reference each paragraph previously alleged in this Complaint.

91. Defendants, individually and through their agents, injured Plaintiff by their failure to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition in violation of N.C. Gen. Stat. § 42-42(a).

92. Plaintiff suffered injuries as a result of the Defendants' violation of N.C. Gen. Stat. § 42-42(a) and Defendants' acts or omissions were a proximate cause of Plaintiff's injuries.

19

**Sixth Cause of Action: Invasion of Privacy – Offensive Intrusion**
**(Against All Defendants)**

93.     Plaintiff realleges and incorporates by reference each paragraph alleged in the Complaint.

94.     Each Defendant injured Plaintiff, directly or through Hill's misconduct, by invading her privacy;

95.     Defendants' intrusion of the Plaintiff's privacy was intentional – knowingly or with reckless indifference to the consequences of the invasion;

96.     Defendants' misconduct would case a reasonable person, under the same circumstances, to be highly offended by the intrusion.

**Seventh Cause of Action: Unfair and Deceptive Trade Practices**
**(Against All Defendants)**

97.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

98.     Defendants Hill, Barnett, and Klutts are in the business of renting residential dwellings in North Carolina to the consuming public.

99.     The actions of Defendants Hill, Barnett, and Klutts constitute an inequitable assertion of power and position against Plaintiff and offend the established public policy of North Carolina which mandates that landlords shall not discriminate against persons in the leasing of a dwelling on the basis of sex and/or a right protected by the FHA in violation of 42 U.S.C. §§ 3604, 3617.

100.    Defendants also have demanded and attempted to collect the full amount of rent at the Subject Property knowing of its inhabitable conditions.

101.     Defendants Hill, Barnett, and Klutts injured Plaintiff, directly or through an employee or agent, by committing these unfair, unethical, deceptive, and illegal practices in violation of N.C. Gen. Stat. § 75-1.1.

102.     Plaintiff is entitled, pursuant to N.C. Gen. Stat. § 75-16, to treble the amount of damages of their actual or compensatory damages.

103.     Plaintiff is entitled to a reasonable attorney fee pursuant to N.C. Gen. Stat. § 75-16.1.

**Eighth Cause of Action: Unfair Debt Collection Practices**
**(Against Defendant Hill and Defendant Barnett)**

104.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

105.     Plaintiff is a consumer and Defendants Hill and Barnett are debt collectors as defined by N.C. Gen. Stat. § 75-50(1) and (3). Rental amounts owed and paid to Defendant by Plaintiff were "debts" as defined by N.C. Gen. Stat. § 75-50(2).

106.     Defendant Hill threatened to make, and upon information and belief, did make false accusations that Plaintiff did not pay rent that she had paid in violation of N.C. Gen. Stat. § 75-51.

107.     Defendant Barnett, upon information and belief, made false accusations that Plaintiff did not pay rent that she had paid in violation of N.C. Gen. Stat. § 75-51.

108.     Defendant Hill engaged in conduct the natural consequence of which was to repress, harass, or abuse Plaintiff in connection with his attempts to collect a debt in violation of N.C. Gen. Stat. § 75-52.

109.    Plaintiff is entitled to recover actual damages to be proven at trial and a statutory penalty of not less than $500 and no more than $4000 for each separate instance of Defendants' unfair debt collection practices pursuant to N.C. Gen. Stat. § 75-56.

110.    Plaintiff is entitled to a reasonable attorney fee pursuant to N.C. Gen. Stat. § 75-16.1.

### Ninth Cause of Action: Battery
### (Against Defendant Hill)

111.    Defendant Hill intended to cause offensive or harmful contact to Ms. Nelson.

112.    Such offensive or harmful contact occurred, and it injured Ms. Nelson by offending her reasonable sense of personal dignity.

113.    This offensive contact occurred without Ms. Nelson's consent.

## VI. JURY TRIAL DEMANDED

114.    Plaintiff requests a trial by jury on all issues so triable.

## VII. RELIEF

WHEREFORE, Plaintiff prays for entry of a judgment against Defendants and each of them that:

1.    Awards compensatory damages pursuant to plaintiffs' federal and state law claims;

2.    Awards punitive damages under the federal Fair Housing Act only;

3.    Declares that each defendant has violated the federal Fair Housing Act and applicable North Carolina law;

4.    Enjoins all unlawful practices alleged in this complaint and imposes affirmative injunctive relief requiring defendants, their contractors, agents, employees, assignees, and any other person acting in concert or participating with them to take affirmative action to provide equal

housing opportunities to all tenants and prospective tenants without regard to sex and to counteract and cure their unlawful and discriminatory practices;

5.  Awards costs of suit, including reasonable attorneys' fees; and,

6.  Awards all such other relief as the Court deems just.

Dated: January 28, 2022.

Respectfully submitted,

/s/ V. Hope Williams
Virginia Hope Williams, N.C. Bar Number 37232
Attorney for Plaintiff
Legal Aid of North Carolina, Inc. – Fair Housing Project
2101 Angier Avenue, Suite 300
Durham, North Carolina 27703
Telephone: (919) 226-5920
Fax: (919) 861-1887
E-mail: hopew@legalaidnc.org

23